UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CONTINENTAL CASUALTY COMPANY, et al., <br><br> Plaintiffs, <br><br> v. <br><br> J.M. HUBER CORPORATION, <br><br> Defendant. | Civil Action No. 13-4298 (CCC) <br><br> OPINION AND ORDER |

**CLARK, Magistrate Judge**

**THIS MATTER** comes before the Court on a motion by Defendant J.M. Huber Corporation to compel the production of documents responsive to Defendant's Third Set of Requests for Production of Documents. [Docket Entry No. 51]. Plaintiffs Continental Casualty Company and Transportation Insurance Company oppose Defendant's motion. [Docket Entry No. 54]. For the reasons set forth below, Defendant's motion to Compel is **GRANTED** in part and **DENIED** in part.

**I.    BACKGROUND**

From approximately 1969 to 1994, Plaintiffs Continental Casualty Company and Transportation Insurance Company (collectively "CNA" or "Plaintiffs") issued insurance policies to their insured, J.M. Huber Corporation ("Defendant"), a specialty engineered materials company. Some of these policies are subject to retrospective premiums whereby the policy holder pays premiums retrospectively based on actual claims and/or losses the policyholder suffered and for which Plaintiffs provided coverage.

On or around March 12, 2012, CNA issued to JM Huber invoice number EA 27327, for $33,629.  Perplexed by the unexpectedly large sum due, Defendant contacted Plaintiffs for an explanation of the charges reflected in the invoice.  Specifically, Defendant sought an understanding of why claims were being reallocated across all policy years from 1978 to 1982.  No sufficient explanation was provided.  Then, on March 6, 2013, Plaintiffs issued to Defendant invoice number EA 27893 for $737,116.  Despite Defendant's request for an explanation, Plaintiffs did not respond.  Nor did Plaintiffs provide an explanation for invoice number EA 28716 issued on October 16, 2014 for $741,408.

Plaintiffs instituted this action on July 12, 2013.  [Docket Entry No, 1].  On October 8, 2014, Plaintiffs filed their Amended Complaint for breach of contract, unjust enrichment, and account stated arising from Defendant's failure to pay the 2012, 2013, and 2014 invoices.  [Docket Entry No. 37].  On June 18, 2015, Defendant served its Third Set of Requests for Production of Documents to Plaintiffs ("Third Requests") seeking documents related to prior litigation involving Plaintiffs' retrospective premium calculations and/or retrospective rating adjustments, retrospective premiums under Plaintiffs' policies, or Plaintiffs' invoices for retrospective premiums.  Specifically, Defendant sought pleadings, deposition transcripts, dispositive motion briefing, and expert reports generated in prior litigation since January 1, 2005.  Plaintiffs objected to each of these requests on the grounds that they were overly broad, unduly burdensome, vague, ambiguous, confidential, and protected by the attorney-client and/or work-product privileges.

Finding it necessary to seek Court intervention, Defendant raised Plaintiffs' refusal to produce documents responsive to the Third Requests with the Court in its October 21, 2015 letter.  Plaintiffs responded to this letter on October 26, 2015—firmly opposing any document production.  Following a discovery status conference held on October 28, 2015, the Court issued an order

requiring Plaintiffs to confirm whether they were "amenable to disclosing a list of litigated actions" in which payment of retrospective premiums was at issue. [Docket Entry No. 46]. On November 13, 2015, Plaintiffs advised the Court that they were not amenable to disclosing this list.

Subsequent attempts by the parties to narrow the scope of the Third Discovery Requests have been unavailing. Accordingly, this Court ordered the instant motion to compel. [Docket Entry No. 50].

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 26 governs the scope of discovery in federal litigation and provides that:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). Rule 26 is to be construed liberally in favor of disclosure, as relevance is a broader inquiry at the discovery stage than at the trial stage. *Tele–Radio Sys. Ltd. v. De Forest Elecs., Inc.,* 92 F.R.D. 371, 375 (D.N.J. 1981). While relevant information need not be admissible at trial in order to grant disclosure, the burden remains on the party seeking discovery to "show that the information sought is relevant to the subject matter of the action and may lead to admissible evidence." *Caver v. City of Trenton*, 192 F.R.D. 154, 159 (D.N.J. 2000). Upon a finding of good cause, a court may order discovery of any matter relevant to a party's claims, defenses or the subject matter involved in the action. "Although the scope of discovery under the Federal Rules is unquestionably broad, this right is not unlimited and may be circumscribed." *Bayer AG v. Betachem, Inc.,* 173 F.3d 188, 191 (3d Cir. 1999). Discovery requests may be curtailed to protect

3

a person from whom discovery is sought from "annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1).

**III.   DISCUSSION**

Federal Rule of Civil Procedure 37 allows a party who has received evasive or incomplete discovery responses to seek a court order compelling additional disclosure or discovery. "The party seeking the order to compel must demonstrate the relevance of the information sought. The burden then shifts to the opposing party, who must demonstrate in specific terms why a discovery request does not fall within the broad scope of discovery or is otherwise privileged or improper." *Option One Mortgage Corp. v. Fitzgerald,* 2009 WL 648986 at *2 (M.D.Pa. Mar.11, 2009).

Here, Defendant seeks to compel production of all pleadings, deposition transcripts, dispositive motions and opposition to same, and expert reports, in any legal action or litigation on or after January 1, 2010, in which "CNA" was or is a party, wherein a party asserted claims for breach of contract or bad faith related to "CNA's" retrospective rating calculations or adjustments, retrospective premiums, or "CNA'S" invoices for retrospective premiums. Defendant defines CNA as "[Plaintiffs], their present and former officers, directors, agents, servants and employees; and predecessor organizations; their present and former affiliates and subsidiaries; and all persons who have acted or purported to act on their behalf, including without limitation Resolute and NICO . . ." Plaintiffs oppose Defendant's Application [Docket Entry No. 54].

In support of its motion, Defendant argues that the Third Requests seek documents highly relevant to Defendant's defenses and counterclaims because they provide historical insight into Plaintiffs' handling of J.M. Huber's claims. Specifically, in its Answer, Defendant alleges that Plaintiffs' claims are barred by Plaintiffs' breach of the implied duty of good faith and fair dealing, breach of the relevant insurance-related agreements, and improper calculation of the retrospective

premium amounts.  Defendant also asserts counterclaims against Plaintiffs for breach of contract and breach of the duty of good faith and fair dealing based on Plaintiffs' reallocation of retrospective premiums.  Arguably, the Third Requests would support these claims and defenses by allowing Defendant to understand Plaintiffs' prior practices in managing its insurance claims—providing a comparison of Plaintiffs' past practices in the calculation, billing, and allocation of retrospective premiums, to their current practices.  Moreover, these documents purportedly could show that Plaintiffs have taken positions inconsistent in this litigation compared to prior litigation.

On the other hand, Plaintiffs argue that the documents requested by the Third Requests bear no relevancy to Defendant's counterclaims and Defenses.  That is because the fact of any prior case with similar claims and defenses would "necessarily involve different insureds, different insurance contracts, different lines of insurance coverage, different claims, and potentially different insurers and different claims handling procedures."

Contrary to Plaintiffs' position, the Court finds that the documents requested in the Third Requests are relevant to the instant action.  Generally speaking, courts within the Third Circuit are reluctant to permit discovery of "previous lawsuits filed against insurance companies concerning the disputed policy provisions at issue in [a] bad faith litigation." *McCrink v. Peoples Benefit Life Ins. Co.*, 2004 U.S. Dist. LEXIS 23990, at *20 (E.D. Pa. Nov. 29, 2004).  This is particularly true where the requests for prior litigation documents are overly broad and unfettered, encompassing lawsuits involving totally different facts and circumstances. *North River Ins. Co. v. Greater N.Y. Mut. Ins. Co.*, 872 F. Supp. 1411, 1412 (E.D. Pa. 1995).  Such requests amount to a "'fishing expedition' that our Court has generally refused to compel." *See Fidelity & Deposit Co. v. McCulloch*, 168 F.R.D. 516, 526 (E.D. Pa. 1996) (citation omitted).  Nevertheless, prior litigation documents demonstrating that a party has acted "in an inconsistent manner in resolving claims

where *similar policies* were involved" may be relevant to bad faith claims. *See Nestle Foods Corp. v. Aetna Cas. & Sur. Co.*, 135 F.R.D. 101, 106-111 (D.N.J. 1990) (allowing for discovery of prior lawsuits involving similar policy provisions). Here, Defendant argues that its Third Requests would allow it to determine whether Plaintiffs have acted inconsistently with respect to its retrospective premiums insurance provisions. As such, Defendant's Third Requests would lead to relevant information as they relate to its claims for bad faith.[1]

However, Plaintiffs argue, and this Court agrees, that Defendant's broadly drafted requests would unduly burden Plaintiffs. *See Nestle*, 135 F.R.D at 110-11 (finding the plaintiffs broad request for prior lawsuit information unduly burdensome); *McCrink*, 2004 U.S. Dist. LEXIS 23990 at *20 (finding a request for litigation information from prior lawsuits involving similar claims for bad faith unduly burdensome); *McCulloch*, 168 F.R.D. at 525-526 (finding that a party's request for prior lawsuit information would amount to a "fishing expedition"). Nevertheless, in their opposition, Plaintiffs appear amenable to responding to Defendant's Third Requests as limited by the January 21, 2016 Letter. [Docket Entry No. 54-14]. As, such, Plaintiffs shall produce non-privileged documents in accordance with the January 21, 2016 Letter, further limiting the transcripts of all depositions taken to "CNA" or its employees, representatives, or agents.

---

[1] Defendant's Third Requests also seek discovery of prior actions involving claims for breach of contract. Defendant does not provide, nor is this Court aware of any legal authority supporting Defendant's position that prior lawsuit discovery is relevant to a claim for breach of contract.

## III. CONCLUSION AND ORDER

The Court having considered the papers submitted pursuant to Fed. R. Civ. P. 78, and for the reasons set forth above;

**IT IS** on this 27th day of June, 2016,

**ORDERED** that Defendant's Motion to compel [Docket Entry No. 51] is **GRANTED** in part and **DENIED** in part; and it is further

**ORDERED** that the Clerk of Court is to terminate the motion at Docket Entry No. 51.

    s/ James B. Clark, III
**JAMES B. CLARK, III**
**United States Magistrate Judge**